ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **YASHIRA QUILES CARRASQUILLO**<br><br>Apelante<br><br>v.<br><br>**AMERICAN POSTAL WORKERS UNION, UNION, UAW, AFL-CIO; et al.**<br><br>Apelado | KLAN202401033 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Fajardo**<br><br>Civil Núm.:<br>**FA2023CV00387**<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 11 de febrero de 2025.

Comparece ante nos, mediante *Apelación*, la señora Yashira I. Quiles Carrasquillo (Sra. Quiles o Apelante) y nos solicita que revoquemos la *Sentencia Parcial* emitida el 19 de septiembre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI).[1] Mediante la *Sentencia Parcial*, el TPI desestimó la *Demanda Enmendada*[2] presentada por la Apelante en contra de la American Postal Workers Union, AFL-CIO (APWU Nacional o Apelado) al determinar que carecía de jurisdicción a la causa de acción estar vedada por la Ley de Compensación de Empleados Federales, 5 U.S.C. sec. 8101 *et seq.* (FECA, por sus siglas en inglés) y al dejar de exponer una reclamación que justifique la concesión de un remedio, conforme la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2.

---

[1] Apéndice de *Apelación*, Anejo XXXIV, págs. 352-363. Notificada y archivada en autos el 20 de septiembre de 2024.
[2] Tomamos conocimiento judicial del caso FA2023CV00387 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), Entrada Núm. 9.

Por los fundamentos que discutiremos a continuación, revocamos la *Sentencia Parcial* emitida.

**I.**

El caso de autos originó el 9 de mayo de 2023, luego de que la Sra. Quiles presentase una *Demanda* sobre daños y perjuicios al amparo del Artículo II, Secciones 1 y 8 de la Constitución de Puerto Rico, Const. ELA [Const. PR], LPRA, Tomo 1, y los Artículos 1536 y 1538 del Código Civil de Puerto Rico, 31 LPRA secs. 10801 y 10803, en contra de la APWU Nacional y de la Local 1070, afiliado local de la APWU Nacional (en conjunto, Demandados).[3] El 11 de mayo de 2023, ésta presentó una *Demanda Enmendada* a los fines de corregir unos defectos señalados por la Secretaría del Tribunal de Primera Instancia.

Según alegó la Sra. Quiles, los hechos que dan lugar a la *Demanda* originaron el 19 de febrero de 2022. En aquella fecha, la Sra. Quiles era la jefa de la Oficina Postal de Luquillo (*Postmaster*) del United States Postal Service (USPS). En esa fecha, a eso de la 10:31 AM, Gabriel Medina (Medina), empleado del USPS, llegó a la Oficina Postal de Luquillo acompañado por Luis Soto (Soto).[4] Según ésta alegara, Soto era delegado sindical de los Demandados y ocupaba el puesto de "Coordinador de la Región Este".[5]

Al presentarse en la Oficina Postal de Luquillo, Medina y Soto alegadamente entraron por el área de carga sin autorización y sin identificarse. Al ser confrontados por la Sra. Quiles, esta alegó que Soto la agredió verbalmente, haciéndole comentarios sexistas y ofensivos.[6] Tampoco se fue del lugar, pese haberle ordenado marcharse de la Oficina Postal. En todo momento, la Sra. Quiles alegó sentirse atemorizada e intimidada por la conducta de Soto,

---

[3] Apéndice, *supra*, Anejo I, págs. 1-9.
[4] *Íd.*, pág. 2.
[5] *Íd.*
[6] *Íd.*, pág. 3.

que ella percibió como amenazas de daño corporal hacia ella y su familia.[7] Eventualmente, la Sra. Quiles llamó a la Policía de Puerto Rico y radicó la Querella Núm. 2022-12-046-00355.[8]

Así las cosas, el 22 de febrero de 2022, la Apelante solicitó ante el Tribunal de Primera Instancia, Sala Municipal de Fajardo, una orden de protección al amparo de la Ley para la Protección de Víctimas de Violencia Sexual, Ley Núm. 148-2015, 8 LPRA sec. 1281 *et seq.*, en contra de Soto. El 14 de junio de 2022, el Tribunal de Fajardo emitió una *Orden de Protección* final y firme.

La Sra. Quiles alegó que la conducta de Soto provocó que el 26 de julio de 2022, el USPS le informara a Soto que lo estaban poniendo en licencia administrativa, por lo que recibió instrucciones de permanecer fuera de cualquier facilidad postal, excepto como cliente. No obstante, la Apelante alegó que el 3 de noviembre de 2022, Soto se personó a una facilidad postal como representante sindical. La *Postmaster* de aquella facilidad, Debbie Díaz, sabiendo que a Soto no le estaba permitido entrar a las facilidades, le ordenó que se fuera, por lo que Soto alegadamente se tornó hostil.[9] En aquella fecha, la Sra. Quiles se encontraba en aquella facilidad, aunque no vio a Soto.[10]

El 8 de marzo de 2023, Soto se personó a la Oficina Postal de Río Grande, el nuevo lugar de trabajo asignado a la Sra. Quiles, mientras que ella se encontraba ahí.[11] Ella alegó sentir pánico y se fue del local una vez Soto se fue. Posteriormente, el 13 de marzo de 2023, Soto se presentó nuevamente en la Oficina Postal de Río Grande y se encontró con la Sra. Quiles. Según la *Demanda,* al ver a la Sra. Quiles, Soto comenzó a dirigir la cámara de su celular hacia

---

[7] *Íd.*, págs. 3-4.
[8] *Íd.*, pág. 4.
[9] *Íd.*, págs. 5-6.
[10] *Íd.*, pág. 6.
[11] *Íd.*

ella, grabándola sin su autorización.[12] A raíz de estos hechos, ese mismo día, la Apelante acudió al Tribunal de Primera Instancia, Sala Municipal de Fajardo, y solicitó una orden de protección al amparo de la Ley Contra el Acecho de Puerto Rico, Ley Núm. 284-1999, según enmendada, 33 LPRA sec. 4013 *et seq.*, la cual fue concedida *ex parte*. El 3 de mayo de 2024, el Tribunal de Primera Instancia expidió una Orden de Protección final y firme con vigencia hasta el 3 de mayo de 2024 en el caso núm. FAL 2842023-01139.[13]

Así las cosas, el 9 de mayo de 2023, la Sra. Quiles presentó la *Demanda* que originó este caso ante el TPI. En la misma, señaló los hechos aquí descritos y responsabilizó a los Demandados como los responsables de la conducta de Soto. Señaló que los Demandados responden por la conducta de Soto, como representante de ellos en su capacidad como Coordinador de la Región Este. Alegó que los Demandados tenían, o debían tener, conocimiento de que Soto y otros representantes de la unión incurrían en conducta antijurídica.[14] En particular, alegó que la parte demandada incumplió con su deber de supervisar adecuadamente a sus representantes en el desempeño de sus deberes.[15]

Tras varios trámites procesales, incluyendo una *Moción de Desestimación* presentada por la Local 1070,[16] el 14 de julio de 2023, la parte demandada, APWU Nacional, presentó una *Solicitud de Desestimación de Demanda Enmendada*, en la que solicitó la desestimación del caso por falta de jurisdicción.[17] En primer lugar, señaló que la *Demanda* de la Sra. Quiles presentó dos (2) causas de acción sobre daños basados en cuatro (4) eventos entre ella y Soto. De estos cuatro (4) eventos, sólo interactuaron en dos ocasiones,

---

[12] *Íd.*
[13] *Íd.*, pág. 7.
[14] *Íd.*
[15] *Íd.*, pág. 8.
[16] *Íd.*, Anejo II, págs. 10-16. La misma fue denegada el 6 de julio de 2023. Entrada Núm. 35 en SUMAC.
[17] Apéndice, *supra*, Anejo VIII, págs. 39-141.

siendo estas el 19 de febrero de 2022, cuando Soto se personó a la Oficina Postal de Luquillo con Medina, y el 13 de marzo de 2023, cuando Soto se personó en la Oficina Postal de Río Grande y la grabó.[18]

A pesar, de que la Sra. Quiles tuviera una causa de acción en contra de Soto, APWU Nacional resaltó que él no fue incluido como parte en la presente *Demanda*, sino que la misma fue presentada en contra de APWU Nacional y de la Local 1070.[19] APWU Nacional arguyó que según la Sra. Quiles:

> '[L]a parte demandada' – sin precisar si se refiere a APWU Nacional o la Local 1070 – incumplió con sus deberes de adiestrar y supervisar a Soto. Sin embargo, la [Sra. Quiles] no cita fuente de derecho alguna mediante la cual le pueda imputar responsabilidad a la APWU Nacional por el alegado comportamiento de Soto.[20]

En consecuencia, presentó cuatro (4) razones por las cuales el TPI debería desestimar la *Demanda*:

1. Alegó que la *Demanda* "no es otra cosa que un 'shotgun pleading', la cual confunde unas partes con las otras y cuya confusión y falta de especificidad incumple con el estándar de Twobly-Iqbal".[21]

2. Alegó que la *Demanda* "no levanta alegación alguna de que Soto haya laborado por la APWU Nacional, razón que impide imputarle responsabilidad vicaria a la APWU Nacional".[22]

3. Alegó que "la teoría de responsabilidad legal de la [APWU Nacional] se fundamenta en la afiliación entre la APWU Nacional y la Local 1070. Sin embargo, los cimientos básicos de la jurisprudencia laboral hacen evidente que una entidad nacional no responde por los actos de sus locales afiliadas, en

---

[18] *Íd*., págs. 39-40.
[19] *Íd*., pág. 40.
[20] *Íd*. (citas omitidas).
[21] *Íd*., pág. 41.
[22] *Íd*.

ausencia de evidencia de que la internacional instigó, fomentó, ratificó o apoyó dichos actos".[23]

4. Alegó que "la reclamación de la Demandante está vedada por la legislación federal que establece el esquema de compensación para empleados federales, por daños que sufran en el ámbito de su trabajo".[24]

Con su *Moción de Desestimación*, la APWU Nacional anejó una *Declaración Jurada* juramentada por la señora Elizabeth Powell, secretaria y tesorera nacional de la APWU Nacional, que juró que el puesto de "Eastern Regional Coordinator" de la entidad nacional lleva ocupado desde el 2019 por el señor AJ Jones.[25] Además, la Sra. Powell juró que el puesto de "Eastern Regional Coordinator" es responsable por las actividades de la unión en los estados de Delaware y Maryland, así como porciones de Nueva York, Nueva Jersey, Pensilvania, Virginia, West Virginia y Washington DC.[26] También anejaron el "Constitution and Bylaws of the American Postal Workers Union, AFL-CIO" (Constitución APWU).[27]

La APWU Nacional arguyó que contrario a lo que alegó la Sra. Quiles, Soto no es representante de la unión nacional, sino de la Local 1070, afiliado local de la APWU Nacional. Según la APWU Nacional, esto quedó demostrado por el "Charge" presentado por la Sra. Quiles en contra de Soto, anejado como Exhibit 2 de la *Moción de Desestimación*,[28] que bajo el encasillado "Labor Organization or its Agents Against Which Charge is Brought", la Sra. Quiles puso "APWU 1070".[29]

Conforme a la Regla 8.4 de Procedimiento Civil, *supra*, R. 8.4, la Sra. Quiles tenía veinte (20) días para contestar la *Moción de*

---

[23] *Íd.*
[24] *Íd.*
[25] *Íd.*, págs. 53-54.
[26] *Íd.*, pág. 54.
[27] *Íd.*, págs. 55-132.
[28] *Íd.*, págs. 133-141.
[29] *Íd.*, pág. 133.

*Desestimación* presentada el viernes, 14 de julio de 2023 por la APWU Nacional. El TPI entendió que el término dispuesto para contestar la *Moción de Desestimación* culminó el jueves, 3 de agosto de 2023. **No obstante, el 4 de agosto de 2023, la Sra. Quiles presentó una *Solicitud de Extensión de Término*, en la que solicitó una prórroga hasta el lunes, 14 de agosto de 2023 para presentar su postura en cuanto a la *Moción de Desestimación* de la APWU Nacional.**[30] **En dicha *Solicitud de Extensión de Término*, la parte demandante expresó que "[e]l término para presentar oposición a la Moción de Desestimación radicada por la co-demandada APWU [Nacional] el 14 de julio de 2023, vence el próximo 7 de agosto de 2023".**[31] **Arguyó que requería una prórroga hasta el 14 de agosto de 2023 "con la única intención de poder atender con la rigurosidad que amerita, los múltiples asuntos presentados en la moción dispositiva".**[32] **El 7 de agosto de 2023, el TPI le concedió el término solicitado.**[33]

Posteriormente, **el 11 de agosto de 2023, la Sra. Quiles presentó una *Segunda Solicitud de Extensión de Término*** en la que señaló que su representación legal había sido diagnosticada con COVID-19, por lo que **solicitó una prórroga adicional hasta el lunes, 21 de agosto de 2023 para presentar la contestación**.[34] **La misma fue concedida el 11 de agosto de 2023**.[35]

Así las cosas, el lunes, 21 de agosto de 2023, la Sra. Quiles presentó la *Oposición a Moción de Desestimación*.[36] En primer lugar, arguyó que la *Demanda* cumplía con los requisitos de la Regla 6 de Procedimiento Civil, *supra*, R. 6, y establecía una causa de acción

---

[30] *Íd.*, Anejo XIV, págs. 163-164.
[31] *Íd.* (Énfasis nuestro).
[32] *Íd.* (Énfasis nuestro).
[33] *Íd.*, Anejo XV, pág. 165.
[34] *Íd.*, Anejo XVI, págs. 166-167.
[35] *Íd.*, Anejo XVII, pág. 168.
[36] *Íd.*, Anejo XVIII, págs. 169-187.

válida sobre la cual el TPI podía conceder un remedio.[37] También arguyó que la APWU Nacional podía responder por los actos del representante de su afiliado, la Local 1070, citando así la Sección 1, inciso (d) del Artículo 15 de la Constitución APWU y que existía una relación de dependencia entre los Demandados.[38]

Por otro lado, rechazó el argumento de la APWU Nacional en cuanto a la inmunidad que le confieren las leyes federales. En particular, arguyó que no era de aplicación lo dispuesto en la Ley Norris-La Guardia, 29 U.S.C. sec. 101, puesto que esta solamente establece una inmunidad en los casos presentados ante un "Court of the United States" en casos de injunctions.[39] Tampoco aplicaba porque la referida ley federal tiene como fines atender disputas laborales, y el caso de autos no constituía una disputa laboral.[40]

En cuanto a la aplicación de FECA, la Sra. Quiles sostuvo que esta sólo le otorga inmunidad a los patronos y no a terceros, como la APWU Nacional.[41] Argumentó que "[n]ada en FECA establece la obligación del Gobierno de Estados Unidos de responder por los daños causados a un empleado federal por actuaciones torticeras de terceros como tampoco el deber del empleado lesionado de reclamar sus beneficios cuando el empleado conoce que los daños son causados por terceros".[42]

Así las cosas, el 21 de septiembre de 2023, la APWU Nacional presentó una *Réplica de la APWU Nacional en Apoyo de su Moción de Desestimación.*[43] En primer lugar, arguyó que la Sra. Quiles no expuso hecho alguno que permitiera al TPI concluir que la APWU Nacional sabía de la alegada conducta de Soto, que la APWU Nacional asumió un deber de impedir dicha conducta y que la APWU

---

[37] *Íd.*, págs. 171-176.
[38] *Íd.*, pág. 170.
[39] *Íd.*, págs. 182-183.
[40] *Íd.*, pág. 185.
[41] *Íd.*, pág. 186.
[42] *Íd.*
[43] *Íd.*, Anejo XXIV, págs. 283-294.

Nacional instigó o fue participe de dicha conducta.[44] También arguyó que a base de *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212 (1979), "la única manera mediante la cual la Demandante puede atribuirle responsabilidad a la APWU Nacional por los actos de Soto – un representante de la Local [1070] – es demostrando que la APWU Nacional fue copartícipe en los hechos o que la Local [1070] actuó como agente de la APWU Nacional".[45] También rechazó que existiera una relación de dependencia entre APWU Nacional y la Local 1070 y sostuvo la aplicación de la Ley Norris-La Guardia y de FECA.[46]

El 17 de noviembre de 2023, la Sra. Quiles presentó una *Dúplica* a la *Réplica* que presentó la APWU Nacional.[47] Nuevamente se sostuvo en sus argumentos y rechazó la procedencia de la *Moción de Desestimación* presentada por la APWU Nacional.

Así las cosas, el 19 de septiembre de 2024, el TPI emitió la *Sentencia Parcial* de la cual se recurre, declarando Ha Lugar la *Moción de Desestimación* presentada por la APWU Nacional y desestimando la causa de acción presentada en contra de esta.[48] En primer lugar, el TPI determinó que la Sra. Quiles no había presentado una oposición a la *Moción de Desestimación*. Resolvió que:

> Conforme a la Regla 8.4 de Procedimiento Civil, Quiles tenía veinte (20) días para presentar su oposición a la Moción de Desestimación, hasta el 3 de agosto de 2023. 32 LPRA Ap. V, R. 8.4. Habiendo caducado dicho término sin que Quiles haya presentado su posición, damos la Moción de Desestimación por sometida y procedemos a resolverla sin el beneficio de su comparecencia.[49]

También señaló, en una nota al calce, que "[e]l 4 de agosto de 2023, Quiles presentó una Solicitud de Prórroga para oponerse a la

---

[44] *Íd.*, pág. 285.
[45] *Íd.*, pág. 288.
[46] *Íd.*, pág. 289.
[47] *Íd.*, Anejo XXVII, págs. 299-343.
[48] *Íd.*, Anejo XXXIV, págs. 352-363.
[49] *Íd.*, pág. 352.

Moción de Desestimación. Dicha solicitud es tardía y no expone causa alguna que justifique su tardanza, tal como requiere la Regla 68.2 de Procedimiento Civil".[50] Esta conclusión obvia el hecho de que el TPI había concedido la prórroga solicitada el 4 de agosto de 2023 por la Sra. Quiles y una posterior, dándole hasta el lunes, 21 de agosto de 2023 para contestar la *Moción de Desestimación*, término con el cual la Sra. Quiles cumplió.[51] Además, al presentarse la *Oposición a Moción de Desestimación*, el TPI emitió una *Orden* disponiendo "Enterado".[52]

En cuanto a los méritos de la *Moción de Desestimación*, el TPI resolvió que aplicaba la inmunidad que confiere la FECA, por lo que la Sra. Quiles estaba impedida de presentar una demanda en contra de APWU Nacional por los hechos alegados.[53] Citando a la jurisprudencia de los circuitos federales, concluyó que "[m]últiples otros tribunales han resuelto que FECA provee el remedio exclusivo para daños que son el producto de disputas entre empleados federales".[54] "Cada vez que Quiles se encontraba con o percibía a Soto, era en los predios de trabajo, durante horas laborales, y mientras estaba desenvolviéndose en sus funciones".[55] En consecuencia, determinó que aplicaba la ley FECA.

Por otro lado, resolvió que procedía la desestimación de la *Demanda* en contra de APWU Nacional toda vez que la misma deja de exponer una reclamación que justifique la concesión de un remedio. Señaló que el Artículo 1540 del Código Civil, *supra,* establece que un patrono responderá vicariamente por los actos negligentes o torticeros de un empleado. No obstante, en el caso de autos, el TPI estimó que "no hay hechos concretos que nos permitan

---

[50] *Íd.*, esc. 1.
[51] *Íd.*, Anejos XIV, XV, XVI, XVII y XVIII, págs. 163-187.
[52] *Íd.*, XIX, pág. 190.
[53] *Íd.*, Anejo XXXIV, págs. 358-359.
[54] *Íd.*, pág. 359.
[55] *Íd.*

determinar que Soto era empleado de la APWU Nacional o que actuó en representación de ella".[56] Citando el caso de *B. Fernández & Hnos., Inc. v. International Broth. of Teamsters*, 285 F.R.D. 185 (DPR 2012) (SEC), el TPI concluyó que "en casos donde se demanda a una unión internacional y a una unión local, ambas afiliadas entre sí, es necesario diferenciar entre los hechos aplicables a la unión local y la internacional".[57] Luego de discutir una serie de casos federales, concluyó que:

> Aquí no [hay] alegación alguna de que la APWU Nacional participó en o autorizó los actos de Soto, ni que ratificó su conduct[a]. [Ni] [t]an siquiera hay una alegación de que la APWU Nacional conocía de los actos de Soto. Lo único que tenemos ante nosotros son alegaciones de que la APWU Nacional incumplió con unos supuestos deberes de instruir y supervisar a Soto. O sea, se trata de una teoría de negligencia y no de actos intencionales.[58]

Ante aquella determinación, el 23 de septiembre de 2024, la Sra. Quiles presentó una *Moción en Solicitud de Reconsideración*.[59] En esencia, solicitó que el TPI reconsiderara su determinación al no haber tomado en consideración las mociones y argumentos de la parte demandante. En la *Oposición de la APWU Nacional a la Moción de Reconsideración de la Demandante*, APWU Nacional arguyó que, aun habiéndose cometido el error de no considerar la postura de la parte demandante, el TPI cumplió con su deber de resolver conforme a derecho.[60] Así las cosas, el 24 de octubre de 2024, el TPI declaró No Ha Lugar la *Moción en Solicitud de Reconsideración*.

Inconforme, el 20 de noviembre de 2024, la Sra. Quiles presentó la *Apelación* ante nuestra consideración. En la misma, hizo los siguientes señalamientos de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXPEDIR SENTENCIA PARCIAL A FAVOR DE LA APELADA APWU AFL-CIO EN INEQUÍVOCA CONTRADICCIÓN A LA TOTALIDAD DE LA PRUEBA**

---

[56] *Íd.*, pág. 360.
[57] *Íd.*
[58] *Íd.*, pág. 363.
[59] *Íd.*, Anejo XXXV, págs. 364-366.
[60] *Íd.*, Anejo XXXVII, págs. 368-376.

**PRESENTE EN EL EXPEDIENTE JUDICIAL ANTE SÍ Y A SUS PROPIOS ACTOS.**

**ERRÓ EL TRIBUNAL DE INSTANCIA AL EXPEDIR SENTENCIA PARCIAL A FAVOR DE LA APELADA APWU AFL-CIO EN VIOLACIÓN A LAS GARANTÍAS DE DEBIDO PROCESO DE LEY OTORGADO A CADA LITIGANTE POR EL ART. II, SEC. 7 DE LA CONSTITUCIÓN DE PUERTO RICO.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXPEDIR SENTENCIA PARCIAL A FAVOR DE APWU AFL-CIO POR SER ESTA PRODUCTO DE LA NEGLIGENCIA DEL TRIBUNAL EN EL DESEMPEÑO DE SUS FUNCIONES ADJUDICATIVAS.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXPEDIR SENTENCIA PARCIAL A FAVOR DE LA APELADA APWU AFL-CIO EN VIOLACIÓN AL CANON 8 DE ÉTICA JUDICIAL QUE EXIGE A LOS JUECES Y JUEZAS DE TRABAJAR LABORIOSAMENTE EN CUMPLIMIENTO DE LA LEY, EXCLUYENDO LA POSIBLE APARIENCIA DE QUE SON SUSCEPTIBLES A ACTUAR POR INFLUENCIAS DE PERSONAS, GRUPOS, PARTIDOS POLÍTICOS O INSTITUCIONES RELIGIOSAS, POR EL CLAMOR PÚBLICO, POR CONSIDERACIONES DE POPULARIDAD O NOTORIEDAD, O POR MOTIVACIONES IMPROPIAS.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EXPEDIR SENTENCIA PARCIAL A FAVOR DE LA APELADA APWU AFL-CIO EN VIOLACIÓN AL CANON 9 DE ÉTICA JUDICIAL QUE EXIGE A LAS JUEZAS Y LOS JUECES CONCEDERÁN A TODA PERSONA QUE TENGA INTERÉS EN UN PROCEDIMIENTO O A LA ABOGADA O ABOGADO DE DICHA PERSONA EL DERECHO A SER OÍDA CONFORME LO [QUE] DISPONE LA LEY Y CUMPLIR CON EL DEBER MINISTERIAL DE RESOLVER LA CONTROVERSIA FUNDAMENTÁNDOSE EN SU PROPIA EVALUACIÓN DE LA PRUEBA PRESENTADA.**

Según la parte apelante, el recurso de apelación presentado nos solicita que revoquemos la *Sentencia Parcial* por la violación al debido proceso de ley que le ocasionó que el TPI le resolviera en su contra sin tomar en consideración su postura, y no por los méritos de los argumentos jurídicos esbozados por el TPI. Con el beneficio de la postura de la parte apelada, nos encontramos en posición de discutir el derecho aplicable.

**II.**

**A.**

Las Reglas de Procedimiento Civil, *supra*, y el derecho procesal civil en general, se encuentran inspiradas en los "fundamentales valores de justicia, rapidez y economía" y deben ser interpretadas "en búsqueda del objetivo de reconocer el adecuado acceso a los tribunales y el correcto manejo del proceso". J.A. Echevarría Vargas, 3ª ed. rev., Bogotá, Ed. Nomos S.A., 2023, pág. 47. Es a los fines de lograr estos ideales que la Regla 1 de Procedimiento Civil, *supra*, R. 1, dispone que las mismas deben ser interpretadas "de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento".

Las Reglas de Procedimiento Civil "no tienen vida propia [y] sólo existen para viabilizar la consecución del derecho sustantivo de las partes". *Dávila v. Hosp. San Miguel, Inc.*, 117 DPR 807, 816 (1986). Siendo imposible visualizar todas las posibles situaciones que se puedan presentar durante un procedimiento legal, se le ha reconocido un grado de discreción a los tribunales para manejar los incidentes procesales que se presenten ante su consideración.

> Se encuentra reconocido que la discreción es el instrumento más poderoso reservado a los jueces para hacer justicia. Ello pues la aplicación mecánica de las reglas puede tender a producir un falso sentido de seguridad que a menudo se materializa a costa de la justicia. Hallamos el elemento de discreción como parte fundamental de la capacidad decisional asignada a los tribunales de justicia para materializar los propósitos de nuestro sistema judicial que se basan en la justicia, la rapidez y la economía procesal. Así, el adecuado ejercicio de la discreción judicial está estrechamente relacionado con el concepto de razonabilidad.

J.A. Echevarría Vargas, *op. cit.*, págs. 49-50.

Por lo tanto, la discreción "constituye una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera, la que no se da en un vacío ni en ausencia de

parámetros". *Íd.*, pág. 49; *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 711-712 (2019). Ahora bien, la discreción no puede ejercerse de forma arbitraria o irrazonable, por lo que su ejercicio "[n]o significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción". *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). En la medida en que el curso de acción de un tribunal en el ejercicio de su discreción para conducir los procedimientos sea irrazonable o poco sensato, el tribunal estará abusando de su discreción.

**B.**

La Regla 8.4 de Procedimiento Civil, *supra*, R. 8.4, dispone que:

> **Cualquier parte que se oponga a una moción deberá presentar su oposición fundamentada dentro de los veinte (20) días siguientes a ser notificada de la moción**. La oposición deberá acompañarse de cualquier documento o affidavit necesario para su resolución. **Si no se presenta una oposición dentro de dicho término de veinte (20) días, se entenderá que la moción queda sometida**.

*Íd.* (Énfasis nuestro).

Por lo tanto, una parte deberá presentar una oposición a una moción dentro de los veinte (20) días siguientes a su notificación, a consecuencia de que la misma quede por sometida sin el beneficio de su postura. Ahora bien, nuestro ordenamiento jurídico distingue entre los términos prorrogables e improrrogables. Nuestro Tribunal Supremo ha resuelto en varias ocasiones que los tribunales no tienen discreción para prorrogar los términos jurisdiccionales, cuyo incumplimiento con privan al tribunal de jurisdicción sobre el caso. *Soto Pino v. Uno Radio Group*, 189 DPR 84 (2013); *Hernández v. Schering Plough*, 159 DPR 367 (2003); *Asoc. Srs. Cuidado Salud Visual v. Morales*, 124 DPR 591 (1989).

Contrario a los términos jurisdiccionales, los términos de estricto cumplimiento no son fatales y podrán ser prorrogados. *Soto Pino v. Uno Radio Group*, *supra*, pág. 92. Al momento de evaluar si se concede o no una prórroga, los tribunales deben tomar en consideración lo dispuesto en la Regla 6.6 de Procedimiento Civil, *supra*, R. 6.6. Esta dispone que "[t]oda solicitud de prórroga **deberá acreditar la existencia de justa causa con explicaciones concretas debidamente fundamentadas**. Cualquier solicitud de prórroga **deberá presentarse antes de expirar el plazo cuya prórroga se solicita** y hacerse conforme lo establece la Regla 68.2". *Íd.* (Énfasis nuestro). En este sentido, para conceder una prórroga, el tribunal deberá evaluar si concurren los siguientes factores: (1) que se demuestre justa causa; y, (2) que se solicite antes de haber expirado el término concedido por las reglas, orden o prórroga previa.

En cuanto al segundo requisito, la Regla 68.2 de Procedimiento Civil dispone que se podrá conceder una prórroga cuando la solicitud de prórroga se haya presentado fuera del término cuando:

> **[L]a omisión se debió a justa causa**, pero no podrá prorrogar o reducir el plazo para actuar bajo las disposiciones de las Reglas 43.1 [enmiendas o determinaciones iniciales o adicionales], 44.1 [costas y honorarios de abogados], 47 [reconsideración], 48.2 [término para presentar moción de nuevo juicio], 48.4 [término para ordenar un nuevo juicio a iniciativa propia del tribunal], 49.2 [errores, inadvertencia, sorpresa, negligencia excusable, descubrimiento de nueva prueba, fraude, etc.] y 52.2 [términos y efectos de la presentación de una apelación, un recurso de certiorari y un recurso de certificación] todas, salvo lo dispuesto en las mismas bajo las condiciones en ellas prescritas.

> *Íd.* (Énfasis nuestro).

En este caso, una solicitud de prórroga podrá ser presentada fuera de haber expirado el plazo especificado, si la omisión se debió a justa causa.

**C.**

Nuestro sistema de derecho reconoce la importancia de la consistencia de las determinaciones interlocutorias realizadas por los tribunales, relacionadas con un caso. A esto se le ha denominado la doctrina de la ley del caso, que "persigue la consistencia y evitar reconsideraciones sobre asuntos ya decididos dentro de un mismo pleito en particular". C.E. Díaz Olivo, *Litigación Civil*, 2ª ed. rev., Bogotá, Ed. AlmaForte, 2022, pág. 139. "Dicho de otra manera, de ordinario los planteamientos que han sido objeto de adjudicación por el foro de instancia y/o por este Tribunal no pueden reexaminarse. Esos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la 'ley del caso'". *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 607-608 (2000).

Ahora bien, esto no significa que un tribunal no puede variar de sus determinaciones realizadas en un pleito. La doctrina de la ley del caso no debe interpretarse como una manera de defender una determinación claramente errónea. "Así, reiteramos que la doctrina de la ley del caso es una al servicio de la justicia, no la injusticia; no es férrea ni de aplicación absoluta. Por el contrario, es descartable si conduce a resultados manifiestamente injustos". *Íd.*, pág. 608. (Cita omitida). "Es por esto que, en nuestra jurisdicción, un juez de instancia no queda atado por sus determinaciones interlocutorias, aun cuando éstas no hayan sido objeto de reconsideración o revisión". *Íd.*, págs. 608-609. Lo importante al momento de aplicar la doctrina de la ley del caso es velar que la determinación del tribunal no esté causando una grave injusticia.

**III.**

En resumen, la controversia presentada en la *Apelación* trata sobre el proceder del TPI con relación a la *Moción de Desestimación* presentada por APWU Nacional. La parte apelante señala que el TPI

erró al emitir una *Sentencia Parcial* sin tomar en consideración la *Oposición a la Moción de Desestimación* que presentó el 21 de agosto de 2023. También alega que la conducta del TPI violó el debido proceso de ley de la Sra. Quiles. La parte apelada, por su parte, alega que la conducta del TPI no violentó los derechos de la Sra. Quiles, puesto que la primera *Solicitud de Prórroga* fue presentada el 4 de agosto de 2024, fuera del término para presentar la contestación a la *Moción de Desestimación*. Añade que aun habiéndose cometido aquel error, no se violentó el debido proceso de ley de la Sra. Quiles pues la determinación del TPI fue correcta en derecho. Tras un análisis del derecho aplicable, concluimos que se cometió el error señalado, por lo que procede la revocación de la *Sentencia Parcial*.

Toda determinación que realiza un juez o una jueza en el desempeño de sus funciones adjudicativas está revestida por un nivel de discreción judicial. En algunas circunstancias, dicha discreción es amplia y en otras es restringida. Dentro de las determinaciones que suelen hacer con frecuencia los jueces de instancia se encuentran aquellas relacionada con la concesión de prórrogas, así como el manejo de mociones interlocutorias y dispositivas. Recordemos que son los jueces al nivel de instancia que están encomendados con guiar el proceso judicial hacia una solución justa y completa de las controversias presentadas ante ellos. Su conducta merece un alto grado de deferencia, especialmente en asuntos de manejo de caso, salvo que medie prejuicio, parcialidad, error manifiesto o abuso de discreción. Por otro lado, el ejercicio de la discreción judicial debe estar fundada en un análisis de razonabilidad, por lo que su ejercicio no puede constituir arbitrariedad o irracionabilidad. Dicha conducta impide la función judicial e invita cuestionamientos sobre la imparcialidad del juzgador.

Dentro de este marco interpretativo es que debemos analizar el proceder del TPI en el caso de autos. En primer lugar, APWU Nacional presentó una *Moción de Desestimación* el 14 de julio de 2023. Conforme a la Regla 8.4 de Procedimiento Civil, *supra*, R. 8.4, la Sra. Quiles tenía veinte (20) días a partir de su notificación para contestar la moción. Este término culminó el 3 de agosto de 2023. No obstante lo anterior, el 4 de agosto de 2023, la Sra. Quiles presentó una *Solicitud de Prórroga*. Conforme a las Reglas 6.6 y 68.2 de Procedimiento Civil, *Íd.*, Rs. 6.6 y 68.2, el TPI estaba facultado **en este momento** para considerar si la parte demandante presentó la solicitud dentro del término y con justa causa.

Así las cosas, en el ejercicio de su discreción, el 7 de agosto de 2023, el TPI emitió una *Orden* en la que resolvió: "**Ha Lugar. Se le concede hasta el 14 de agosto de 2023 para presentar su posición sobre la solicitud de desestimación"**.[61] Es con este pronunciamiento que el TPI autorizó la presentación de una oposición a la *Moción de Desestimación* fuera del término original. Así las cosas, el 11 de agosto de 2023, la Sra. Quiles presentó una segunda solicitud de prórroga, dentro del término concedido y con justa causa. A esta, el TPI también la declaró Ha Lugar, por lo que el nuevo término para presentar la oposición era hasta el 21 de agosto de 2023. Cumpliendo con este término, el 21 de agosto de 2023, la parte demandante presentó su *Oposición a Moción de Desestimación*.

Como vemos, el TPI tuvo dos (2) oportunidades para evaluar las solicitudes de prórroga presentadas por la Sra. Quiles y en dos (2) ocasiones las concedió. La realidad es que a base de los pronunciamientos del TPI, la *Oposición a Moción de Desestimación* fue válida y oportunamente presentada, por lo que aquel foro tenía

---

[61] *Íd.*, Anejo XV, pág. 165. (Énfasis nuestro).

la obligación de considerar los planteamientos de la parte demandante. No obstante, el 20 de septiembre de 2024, luego de que las partes presentasen una *Réplica* y una *Dúplica,* ambas autorizadas por el TPI, el foro apelado resolvió en contra de la Sra. Quiles. El TPI plasmó en su *Sentencia Parcial* que no estaría considerando las oposiciones de la Sra. Quiles a la primera solicitud de prórroga haberse presentado tardíamente y sin justa causa.

Como hemos resaltado, aunque los tribunales tienen un deber de ser consistentes con sus determinaciones interlocutorias en un mismo pleito, estas pueden ser revocadas u obviadas por el foro que las emitió cuando al hacerse se evita una grave injusticia. Debemos, entonces, determinar si al tomar la *Oposición a Moción de Desestimación* por no presentada, el TPI evitó alguna grave injusticia. Un análisis completo del caso nos obliga a concluir que no. Debemos preguntarnos ¿qué grave injusticia se cometió al permitir que Sra. Quiles presentase una oposición a una moción dispositiva? La realidad es que ninguna. Al contrario, el 7 de agosto de 2023, el TPI ejerció su discreción para permitir la comparecencia de la Sra. Quiles, ofreciéndole una oportunidad para defender su causa de acción y cumplir con los fines de la justicia. Fue en aquel momento, y no al momento de emitir su *Sentencia Parcial,* que el TPI debió denegar la prórroga. Al hacerlo en la *Sentencia Parcial,* una etapa avanzada de los procedimientos, el TPI no evitó una grave injusticia ni corrigió el error.

En cuanto al argumento de la APWU Nacional, que deberíamos sostener la *Sentencia Parcial* por alegadamente ser correcta en derecho, no podemos darle la razón. No estamos ante una situación en la que el TPI consideró los planteamientos de la parte demandante y resolvió que los argumentos de la parte demandada merecían más credibilidad o peso persuasivo. En el caso ante nos, el TPI procedió sin considerar los argumentos de la parte

demandante válidamente presentados, así violándoles el debido proceso de ley en su vertiente procesal. La Sra. Quiles tiene un interés propietario para llevar una causa de acción civil en contra de las partes que alegadamente le causaron un daño. Por lo tanto, tiene derecho a las garantías del debido proceso de ley procesal.

En consecuencia, procede revocar la *Sentencia Parcial* al habérsele violentado el debido proceso de ley a la Sra. Quiles, pues los argumentos presentados en la *Oposición a Moción de Desestimación* debieron haber sido considerados por el TPI. Resuelto que se cometió aquél, no hace falta que entremos a los otros errores señalados por la parte Apelante.

**IV.**

Por los fundamentos discutidos anteriormente, revocamos la *Sentencia Parcial* y devolvemos el caso para la continuación de los procedimientos conforme con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones